# In the United States Court of Federal Claims

BID PROTEST
No. 20-235C
Filed Under Seal:  July 2, 2020
Reissued:  July 30, 2020[*]

<table>
<tr><td>

M V M, INC.,

           Plaintiff,

v.

THE UNITED STATES,

           Defendant,

v.

METROPOLITAN INTERPRETERS
AND TRANSLATORS, INC.,

           Defendant-Intervenor.

</td><td>

Post-Award Bid Protest; Judgment Upon
the Administrative Record; RCFC 52.1;
Best Value Determination; Injunctive
Relief.

</td></tr>
</table>

*Meghan F. Leemon*, Counsel of Record, *Isaias Alba, IV*, *Lauren R. Brier*, *Timothy F. Valley*, Of Counsel, PilieroMazza PLLC, Washington, DC, for plaintiff.

*Miles K. Karson*, Trial Counsel, *Douglas K. Mickle*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Joseph H. Hunt*, Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC; *James Hicks*, Of Counsel, United States Drug Enforcement Administration, for defendant.

*Holly A. Roth*, Counsel of Record, *Liza V. Craig*, *William T. Kirkwood*, *Nicholas V. Albu*, *Louise Zwicker*, *Francisca M. Mok*, Of Counsel, Reed Smith LLP, Washington, DC, for defendant-intervenor.

---

[*] This Memorandum Opinion and Order was originally filed under seal on July 2, 2020 (ECF No. 43). The parties were given an opportunity to advise the Court of their views with respect to what information, if any, should be redacted from the Memorandum Opinion and Order.  The parties filed a joint status report on July 30, 2020 (ECF No. 45) stating that no redactions are necessary.  And so, the Court is reissuing its Memorandum Opinion and Order, dated July 2, 2020.

<u>**MEMORANDUM OPINION AND ORDER**</u>

<u>GRIGGSBY, Judge</u>

# I.      INTRODUCTION

Plaintiff, M V M, Inc. ("MVM"), brings this post-award bid protest action challenging the Drug Enforcement Administration's ("DEA") evaluation process and award decisions in connection with the award of three blanket purchase agreements ("BPAs") for linguistic services to Metropolitan Interpreters and Translators, Inc. ("Metro"). The parties have filed cross-motions for judgment upon the administrative record, pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC"). *See generally* Pl. Mot.; Pl. Mem.; Def. Mot.; Def.-Int. Mot. Metro has also moved to dismiss this matter for lack of subject-matter jurisdiction. Def.-Int. Mot. at 6-7.

For the reasons discussed below, the Court: (1) **DENIES** MVM's motion for judgment upon the administrative record; (2) **GRANTS** the government's and Metro's respective cross-motions for judgment upon the administrative record; (3) **DENIES-AS-MOOT** Metro's motion to dismiss; and (4) **DISMISSES** the complaint.

# II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

## A.      Factual Background

This bid-protest dispute involves the government's multi-year effort to award several blanket purchase agreements to perform linguistic services for the DEA in four geographic regions located in the United States. Specifically, MVM challenges the DEA's evaluation process and award decisions in connection with the award of three blanket purchase agreements to Metro. *See generally* Am. Compl.

MVM argues that: (1) the DEA's evaluation of Metro's quotation under the RFQ's staffing plan factor and MVM's quotation under the RFQ's corporate experience factor was disparate and irrational; (2) the DEA's contracting officer and source selection authority failed to

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the administrative record ("AR"); MVM's memorandum in support of its motion for judgment upon the administrative record ("Pl. Mem."); the government's cross-motion for judgment upon the administrative record ("Def. Mot."); and Metro's cross-motion for judgment upon the administrative record and motion to dismiss ("Def.-Int. Mot."). Except where otherwise noted, the facts cited herein are undisputed.

sufficiently explain their respective decisions regarding the award of the BPA to Metro in Region I; (3) the DEA did not fairly and honestly consider MVM's proposals for Regions I, II and III; and (4) the DEA's best value determinations and trade-off analysis were flawed. *See generally* Pl. Mem.  As relief, MVM requests, among other things, that the Court declare that the DEA's evaluation process and award decisions were arbitrary and capricious, an abuse of discretion and contrary to the Request for Quotations for the procurement.  Am. Compl. at Prayer for Relief.

### 1.    The RFQ

As background, on April 6, 2018, the DEA issued Request for Quotation No. 15DDHQ18Q00000051 (the "RFQ") seeking quotations to provide "intelligence and language analysis support to perform language-related services, including analysis, monitoring, transcription, translation, interpretation, validation, and minimization."  AR Tab 5 at 85.  The RFQ involves the award of a blanket purchase agreement for four different geographical regions located in the United States.  *Id.* at 104.  The DEA's awards for Regions I, II and III are the subject of this protest.  Pl. Mem. at 1.

Specifically, the RFQ provides that:

> This [RFQ] is issued under a single solicitation.  To be considered for award, an offeror need not submit a quote to cover all listed regions.  An offeror may submit price quotes for one, some, or all listed regions. However, to be considered technically acceptable for one region, an offeror must submit a quote for all locations listed within the defined region.

AR Tab 5 at 81.  The RFQ also contemplates a period of performance for each region of one year from the date of award, with four one-year option periods.  *Id.* at 67.

The RFQ also directs offerors to prepare quotations in two separate volumes—a technical quote volume and a business quote volume.  *Id.* at 77.  In this regard, the RFQ provides that the DEA will consider the following six non-price criteria in evaluating the technical quote volume:

- Factor 1:  Corporate Experience
- Factor 2:  Staffing Plan
- Factor 3:  Quality Control Plan
- Factor 4:  Security Plan
- Factor 5:  Invoicing/Fiscal Tracking System
- Factor 6:  Past Performance

*Id.* at 78-79.

In addition, the RFQ provides that each quotation will be assigned a technical rating of "high confidence," "some confidence," or "low confidence." *See e.g.* AR Tab 35 at 1486.[2] The RFQ also provides that these confidence ratings would be comprised of assigned strengths and weaknesses.[3] *Id.*

The RFQ requires that the DEA evaluate price based upon balance, realism and reasonableness. *See e.g.* AR Tab 36 at 1522. Lastly, the RFQ further requires that "[a]ll evaluation factors other than cost or price, when combined, are approximately equal to cost or price" and that the award for each region will be made on a best value, trade-off basis. AR Tab 5 at 81.

**2.      The DEA's Region IV Award And Refreshed Quotation Request**

On December 19, 2018, the DEA awarded the BPA for Region IV to Metro. AR Tab 23 at 1224-25. After MVM filed an unsuccessful agency-level protest of the Region IV award, the DEA requested that all offerors provide refreshed quotes for the remaining regions—Regions I, II and III. *See generally* AR Tabs 26-27; *see also* AR Tab 28 at 1366.

On February 11, 2019, the DEA sent a letter to MVM denying MVM's agency-level protest, which states that MVM's quotation "did not convey the highest confidence in its technical approach to its Quality Control Plan" AR Tab 27 at 1364. The DEA also observes in this letter that "[w]ith MVM's pricing comes a higher degree of risk of not being able to find less common linguists, the increased likelihood of nonperformance for Spanish linguists . . . and sub-par quality control reviews." *Id.*

---

[2] The RFQ provides that a "high confidence" rating means that "[t]he Government has high confidence that the Offeror understands the requirement, proposes a sound approach, and will be successful in performing the contract with little or no Government intervention." AR Tab 35 at 1486. The RFQ defines a "some confidence" rating as "[t]he Government has some confidence that the Offeror understands the requirement, proposes a sound approach, and will be successful in performing the contract with some Government intervention." *Id.* The RFQ defines a "low confidence" rating as "[t]he Government has low confidence that the Offeror understands the requirement, proposes a sound approach, and will be successful in performing the contract even with Government intervention." *Id.*

[3] The RFQ defines a "strength" as "a proficiency that meets requirements and indicates an increased likelihood of successful contractor performance on the project." AR Tab 35 at 1486. The RFQ defines a "weakness" as "a flaw in the proposal that increases the risk of unsuccessful contractor performance." *Id.*

MVM timely submitted a refreshed quotation, which contains increased pricing for several contract line items.  AR Tab 33 at 1415.  MVM states in its refreshed quote that:

> These changes are made to address two areas that DEA cited in its response to MVM's agency-level protest of the Region IV award.  In denying MVM's protest, DEA referenced a concern that MVM's quoted rates were lower than the awardee and stated that '[w]ith MVM's pricing comes a higher degree of risk of not being able to find less common linguists' and expressed a concern relating to 'the increased likelihood of nonperformance for Spanish linguists where local candidates cannot be identified.'  To address these concerns, MVM has re-assessed its pricing and has increased the rates for several CLINs.

*Id.*

### 3.      The DEA's Evaluations For Regions I, II And III

After the DEA received timely refreshed quotations from several offerors for Regions I, II and III, including quotations from MVM and Metro, the agency convened three separate technical evaluation panels ("TEP") to evaluate the quotations submitted for Regions I, II and III in March 2019.  *Id.* at 1463, 1467, 1483, 1506.

During the evaluation of the refreshed quotations for Region I, the DEA's TEP for Region I rated the quotations submitted by MVM and Metro as follows:

|                                          | MVM             | Metro           |
|------------------------------------------|-----------------|-----------------|
| **Factor 1: Corporate Experience**       | High Confidence | High Confidence |
| **Factor 2: Staffing Plan**              | High Confidence | Some Confidence |
| **Factor 3: Quality Control Plan**       | High Confidence | High Confidence |
| **Factor 4: Security Plan**              | High Confidence | High Confidence |
| **Factor 5: Invoice/Fiscal Tracking System** | High Confidence | High Confidence |
| **Factor 6: Past Performance**           | High Confidence | High Confidence |
| **Overall Rating**                       | High Confidence | High Confidence |

*Id.* at 1467-70.  The DEA found that MVM's and Metro's prices were both reasonable.  AR Tab 36 at 1521.  The DEA's contracting officer also found that "MVM's quote [was] considered to be the best value to the DEA."  AR Tab 37 at 1538.  And so, the DEA awarded the BPA for

Region I to MVM. *Id.* at 1538-39.

During the evaluation of the refreshed quotations for Region II, the DEA's TEP for
Region II rated the quotations submitted by MVM and Metro as follows:

|  | **MVM** | **Metro** |
|---|---|---|
| **Factor 1: Corporate Experience** | High Confidence | High Confidence |
| **Factor 2: Staffing Plan** | High Confidence | High Confidence |
| **Factor 3: Quality Control Plan** | High Confidence | High Confidence |
| **Factor 4: Security Plan** | High Confidence | High Confidence |
| **Factor 5: Invoice/Fiscal Tracking System** | High Confidence | High Confidence |
| **Factor 6: Past Performance** | High Confidence | High Confidence |
| **Overall Rating** | High Confidence | High Confidence |

AR Tab 35 at 1487.  The DEA found that MVM's and Metro's prices were both reasonable.  *Id.*
at 1524.  The contracting officer also found that Metro presented the best value to the
government.  AR Tab 37 at 1549.  And so, the DEA awarded the BPA for Region II to Metro.
*Id.*

During the evaluation of the refreshed quotations for Region III, the DEA's TEP for
Region III rated the quotations submitted by MVM and Metro as follows:

|  | **MVM** | **Metro** |
|---|---|---|
| **Factor 1: Corporate Experience** | High Confidence | High Confidence |
| **Factor 2: Staffing Plan** | High Confidence | High Confidence |
| **Factor 3: Quality Control Plan** | High Confidence | High Confidence |
| **Factor 4: Security Plan** | High Confidence | High Confidence |
| **Factor 5: Invoice/Fiscal Tracking System** | High Confidence | High Confidence |
| **Factor 6: Past Performance** | High Confidence | High Confidence |
| **Overall Rating** | High Confidence | High Confidence |

AR Tab 35 at 1510.  The DEA again determined that MVM's and Metro's prices were both reasonable.  AR Tab 36 at 1527.  The contracting officer also found that Metro's quote was considered to be the best value to the government.  AR Tab 37 at 1558.  And so, the DEA awarded the BPA for Region III to Metro.  *Id.*

### 4.    MVM's GAO Protests And The DEA's Corrective Action

On June 17, 2019, MVM filed timely protests of the awards of the BPAs for Regions II, III and IV before the United States Government Accountability Office ("GAO").  *See generally* AR Tab 45.  Metro also filed a protest before the GAO challenging the award of the BPA for Region I.  *See generally* AR Tab 44.

Because the DEA decided to take corrective action in response to these protests, the GAO dismissed the protests on July 11, 2019.  AR Tab 46 at 1716; *see also* Am. Compl. at ¶¶ 24-25; Pl. Mem. at 7.  Thereafter, the DEA issued a Corrective Action Plan, which provided, among other things, that:

1. As a part of its corrective action, DEA issued Amendment 00008, on July 18, 2018 to all parties having previously submitted quotations, requesting that all parties extend their previously-expired quotation acceptable period for 120 days for Regions 1, 2, and 3.

2. The agency's technical evaluation panel (TEP) will reconvene to discuss their individual findings and consensus ratings for each technical quotation and make adjustments as/if necessary.

3. The DEA will re-evaluate price consisting of new price realism evaluations.  Price Realism Analysis is intended to determine if the offeror's price is not overly optimistic and impractically low, that the performance of the contract will be at risk.

4. The Section Chief will draft an over aching award recommendation document.  This document shall be based on a comparative assessment of quotation against all source selection criteria in the solicitation and use reports and analyses prepared by others; however the source selection decision shall represent the Section Chief's independent judgment.

AR Tab 47 at 1720.

### 5.    The DEA's Re-Evaluations For Regions I, II And III

Pursuant to its corrective action plan, the DEA:  (1) reconvened the TEPs for Regions I,

II and III; (2) conducted new price realism analyses; (3) issued new best value recommendations; and (4) issued new Source Selection Authority ("SSA") award recommendations for Regions I, II and III. *See generally* AR Tabs 48-51.

During the DEA's re-evaluation for Region I, the TEP for Region I rated the quotations submitted by MVM and Metro as follows:

|  | **MVM** | **Metro** |
|---|---|---|
| **Factor 1: Corporate Experience** | High Confidence | High Confidence |
| **Factor 2: Staffing Plan** | High Confidence | Some Confidence |
| **Factor 3: Quality Control Plan** | High Confidence | High Confidence |
| **Factor 4: Security Plan** | High Confidence | High Confidence |
| **Factor 5: Invoice/Fiscal Tracking System** | High Confidence | High Confidence |
| **Factor 6: Past Performance** | High Confidence | High Confidence |
| **Overall Rating** | High Confidence | High Confidence |

AR Tab 48 at 1726. And so, MVM and Metro both received an overall technical rating of "high confidence" for Region I. *Id.*

In this regard, the TEP for Region I awarded 17 strengths and no weaknesses to MVM's Region I quotation. *Id.* at 1729-32. Of particular relevance to this dispute, the TEP for Region I assigned three strengths to MVM's quotation under the RFQ's corporate experience factor for the following reasons: (1) MVM has over 1,000 linguists so it can staff Region I immediately; (2) MVM's "[m]ost senior executives . . . began their careers as T-III linguists over 29 years ago and actively recruit candidates that share their commitment to keep their company's primary strategic focus to providing T-III services to DEA;" and (3) MVM's "large resources will serve to augment MVM's internal staff, particularly in rarely utilized languages for a cost savings in TDY expenses to the Government." *Id.* at 1730.

The TEP for Region I also assigned 16 strengths and two weakness to Metro's quotation under the RFQ's staffing plan factor. *Id.* at 1727-29. Specifically, the TEP assigned two weaknesses to Metro's quotation because: (1) Metro "does not elaborate upon [its] stated requirement of DEA having to notify them in advance with sufficient lead-time;" and (2) "[t]he

purported time constraints and divisional requirements raise several additional concerns involving the gathering of evidentiary material, which could result in additional costs to the Government." *Id.* at 1728. Due to these concerns, the TEP for Region I rated Metro's quotation as "some confidence" under the RFQ's staffing plan factor. *Id.* at 1727. Based upon this evaluation, the reconvened TEP for Region I selected MVM as the preferred vendor for Region I. *Id.* at 1741.

During the DEA's price realism analysis, the DEA determined that MVM and Metro both proposed fair and reasonable prices. AR Tab 49 at 1888. The DEA also determined that MVM's proposed price of $79,893,374.31 was approximately 6% higher than Metro's proposed price of $75,591,071.08. *Id.*; *see also* Def. Mot. at 11.

Based upon the DEA's price realism analysis and the TEP reports for Region I, the DEA's contracting officer conducted a best value analysis comparing the quotations submitted by MVM and Metro, in which she stated that:

> I reviewed each Offeror's strengths pertaining to their respective approaches under each non-price evaluation factors. I determined that many of these strengths were similar as between both Offerors. For instance, both Offerors received High Confidence for their respective approach for contract performance. After my review, while I considered each Offeror's strengths (both individually and in their aggregate) to be value-added, I found that none of them represented a distinguishing feature of either Offeror's quotation or otherwise set one Offeror apart from the other. As the CO, I choose not to pay the higher price premium for MVM's quotation, given the technical equality of both offeror's, I am assured that there were no discriminatory factors affecting my selection for the agency to pay an 4% higher premium.

AR Tab 50 at 1915. And so, the contracting officer recommended that the DEA award the BPA for Region I to Metro. *Id.*

During the re-evaluation of the quotations for Region II, the TEP for Region II rated the technical quotes submitted by MVM and Metro as follows:

|  | MVM | Metro |
|---|---|---|
| **Factor 1: Corporate Experience** | High Confidence | High Confidence |
| **Factor 2: Staffing Plan** | High Confidence | High Confidence |

| | | |
|---|---|---|
| **Factor 3: Quality Control Plan** | High Confidence | High Confidence |
| **Factor 4: Security Plan** | High Confidence | High Confidence |
| **Factor 5: Invoice/Fiscal Tracking System** | High Confidence | High Confidence |
| **Factor 6: Past Performance** | High Confidence | High Confidence |
| **Overall Rating** | High Confidence | High Confidence |

AR Tab 48 at 1787, 1790.  And so, MVM and Metro both received an overall technical rating of "high confidence" for Region II.  *Id.*

In this regard, the TEP for Region II assigned eight strengths and no weaknesses to MVM's quotation.  *Id.* at 1787-90.  In addition, the TEP identified three "concerns" with MVM's quotation related to the RFQ's corporate experience, staffing plan and quality control plan factors.  *Id.* at 1790.

The TEP for Region II also assigned seven strengths and no weaknesses to Metro's quotation.  *Id.* at 1790-94.  In addition, the TEP identified a "concern" with Metro's Region II quotation for the RFQ's security plan factor.  *Id.* at 1794.  And so, the TEP for Region II selected Metro as the preferred vendor for Region II.  *Id.* at 1806.

During the DEA's price realism analysis, the DEA again determined that MVM and Metro both proposed fair and reasonable prices.  AR Tab 49 at 1895.  The DEA also determined that MVM's proposed price of $112,229,196.13 was approximately 9% higher than Metro's proposed price of $103,100,379.81.  *Id.* at 1893; *see also* Def. Mot. at 11.

Based upon the DEA's price realism analysis and the TEP reports, the DEA's contracting officer conducted a best value analysis comparing the quotations submitted by MVM and Metro, in which she stated that:

> I reviewed [MVM's and Metro's] strengths pertaining to their respective approaches under each non-price evaluation factor[].  I determined that many of these strengths were similar as between both Offerors.  For instance, both Offerors received High Confidence for their respective approach for contract performance.  After my review, while I considered each Offeror's strengths (both individually and in their aggregate) to be value-added, I found that none of them represented a distinguishing feature of either Offeror's quotation or otherwise set one Offeror apart from the other.  As the [contracting officer], I choose not to pay the higher price

> premium for MVM's quotation, given the technical equality of both offeror's, I am assured that there were no discriminatory factors affected my selection for the [DEA] to pay an 8% higher premium.

AR Tab 50 at 1925-27. And so, the contracting officer recommended that the DEA award the BPA for Region II to Metro. *Id.* at 1927.

During the re-evaluation of quotations for Region III, the TEP for Region III rated the quotations submitted by MVM and Metro as follows:

| | **MVM** | **Metro** |
|---|---|---|
| **Factor 1: Corporate Experience** | High Confidence | High Confidence |
| **Factor 2: Staffing Plan** | High Confidence | High Confidence |
| **Factor 3: Quality Control Plan** | High Confidence | High Confidence |
| **Factor 4: Security Plan** | High Confidence | High Confidence |
| **Factor 5: Invoice/Fiscal Tracking System** | High Confidence | High Confidence |
| **Factor 6: Past Performance** | High Confidence | High Confidence |
| **Overall Rating** | High Confidence | High Confidence |

AR Tab 48 at 1811-12. And so, again, MVM and Metro both received overall technical ratings of "high confidence." *Id.*

In this regard, the TEP for Region III assigned six strengths and no weaknesses to MVM's quotation. *Id.* at 1812-14. In addition, the TEP identified two "concerns" with regards to MVM's Region III quotation under the RFQ's corporate experience and invoicing/fiscal tracking system factors. *Id.* at 1812-13.

The TEP for Region III also assigned six strengths and no weaknesses to Metro's quotation. *Id.* at 1811-12. And so, the TEP for Region III recommended Metro as the preferred vendor for Region III. *Id.* at 1819-20.

During the price realism analysis, the DEA determined that MVM and Metro proposed fair and reasonable prices. AR Tab 49 at 1898-99. The DEA also determined that MVM's proposed price of $106,683,094.05 was approximately 8% higher than Metro's proposed price of $98,593,536.20. *Id.* at 1897; *see also* Def. Mot. at 11-12.

Thereafter, the DEA's contracting officer conducted a best value analysis comparing the quotations submitted by MVM and Metro, in which she stated that:

> I reviewed [MVM's and Metro's] strengths pertaining to their respective approaches under each non-price evaluation factor[]. I determined that many of these strengths were similar as between both Offerors. For instance, both Offerors received High Confidence for their respective approach for contract performance. After my review, while I considered each Offeror's strengths (both individually and in their aggregate) to be value-added, I found that none of them represented a distinguished feature of either Offeror's quotation or otherwise set one Offeror apart from the other. As the [contracting officer], I choose not to pay the higher price premium for MVM's quotation, given the technical equality of both offeror's, I am assured that there were no discriminatory factors affected my selection for the [DEA] to pay an 8% higher premium.

AR Tab 50 at 1938. And so, the contracting officer recommended that the DEA award the BPA for Region III to Metro. *Id.*

### 6.     The Source Selection Decision And Awards To Metro

On February 13, 2020, the DEA's source selection authority issued a source selection decision (the "SSA Decision") explaining the DEA's decision to award the BPAs for Regions I, II and III to Metro. *See generally* AR Tab 51. In the SSA Decision, the SSA reviewed the TEP reports for Regions I, II and III and the agency's price realism analysis for each region. *Id.* at 1940. With regards to the technical merits of MVM's quotations for Regions I, II and III, the SSA found that:

> The technical quotation sufficiently demonstrated an understanding of DEA's requirements. There were no weaknesses identified across the three regions. All three Panels noted the 29 years of linguistic and analytic services to Title-III operations by MVM as a strength. MVM's highly qualified senior management with 30+ years of experience with DEA was documented as a strength in Region. MVM staffing plan, recruitment, retention, and training program was documented as a strength in all three regions. A comprehensive Security Plan with software integration that pre-screened applicants for DEA suitability, clearance notifications, language testing, waiver expiration, and security package renewal was identified as a notable strength with all three regions. . . . Based on the review there are no notable variance in the evaluations of regions I, II, and III.

*Id.* at 1945.

With regards to the technical merits of Metro's quotations for Regions I, II and III, the SSA found that Metro's quotations:

> [D]emonstrated extensive knowledge and understanding of the Government's requirement. Notable strengths across all three regions included corporate experience specific to the DEA, including, past performance to include current regional contracts, a comprehensive staffing plan, a Quality Control Plan with quality controls across all contract performance areas. Other strengths include staff training, recruitment and partnerships with subcontractors, and an educational program.

*Id.* But, the SSA observed that:

> Region I noted a weakness regarding notifying offerors in advance or with sufficient lead-time. The TEP noted that factor to be unclear and assigned a weaknesses to the Staffing Plan. The TEP also noted, that they did not define what was consider[ed] to be an urgent need outside the field division requirements. Without more detail, it was interpreted that time constraints associated with lead-time may result in a lapse in wire coverage, lost calls, and additional TDY costs. This could lead to adverse outcomes to investigations. Such a weakness could compromise DEA investigations and increase costs to the government in the form of linguist overtime and TDY costs.

*Id.* And so, the SSA concluded that:

> Based on the briefing provided by the CO and CS it is unclear to me why Regions II and III have no notation of this concern. Based on the write-up as written for Region I this weakness is a valid concern.

*Id.*

The SSA also conducted a trade-off analysis comparing the quotations submitted by MVM and Metro. *Id.* at 1949. Based upon this trade-off analysis, the SSA determined that "[c]onsidering price alone Metro has the best quotation, with a difference of 8% less than MVM." *Id.* The SSA also determined that MVM and Metro demonstrated a clear understanding of the statement of work and successfully demonstrated their corporate experience providing linguistic services. *Id.* Given this, the SSA concluded that:

> After review of each Offeror's strengths and their respective approaches I have concluded that there isn't sufficient justification to warrant the additional cost associated with making an award to MVM. Therefore, [Metro's] quotation is in the best interest of the government and provides

the best value.   Accordingly, my award recommendation is to award
Regions I, II, and III to [Metro] for DEA Linguist services.

*Id.*  And so, the DEA awarded the BPAs for Regions I, II and III to Metro on February 13, 2020.
*Id.* at 1950-55.

### B.        Procedural Background

MVM commenced this action on March 2, 2020.  *See generally* Compl.  On March 3,
2020, Metro filed an unopposed motion to intervene, which the Court granted on March 4, 2020.
*See generally* Mot. to Intervene; Order, dated March 4, 2020.  On March 4, 2020, the Court
entered a Protective Order in this matter.  *See generally* Protective Order.

On March 20, 2020, the government filed the administrative record.  *See generally* AR.
On April 3, 2020, MVM filed an amended complaint.  *See generally* Am. Compl.

On April 3, 2020, MVM filed a motion for judgment upon the administrative record and
a memorandum in support thereof.  *See generally* Pl. Mot.; Pl. Mem.  On April 23, 2020, the
government and Metro filed their respective responses and oppositions to MVM's motion for
judgment upon the administrative record and cross-motions for judgment upon the administrative
record.  *See generally* Def. Mot.; Def.-Int. Mot.  On April 23, 2020, Metro also filed a motion to
dismiss.  Def.-Int. Mot. at 6-7.

On May 7, 2020, MVM filed a response and opposition to Metro's motion to dismiss and
to the government's and Metro's respective cross-motions for judgment upon the administrative
record and a reply in support of its motion for judgment upon the administrative record.  *See
generally* Pl. Resp.  On May 21, 2020, the government and Metro filed their respective reply
briefs.  *See generally* Def. Reply; Def.-Int. Reply.  On June 23, 2020, the Court held oral
argument on the parties' cross-motions.  *See generally* Oral Arg. Tr.

The Court issued an oral opinion during the June 23, 2020, hearing.  The Court issues this
written opinion consistent with its prior oral ruling in this matter.

## III.    LEGAL STANDARDS

### A.        Bid Protest Jurisdiction

The Tucker Act grants the United States Court of Federal Claims jurisdiction over bid
protests brought by "an interested party objecting to a solicitation by a Federal agency for bids or

proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). This Court reviews agency actions that are at issue in a bid protest matter under the Administrative Procedure Act's ("APA") "arbitrary and capricious" standard. *See* 28 U.S.C. § 1491(b)(4) (adopting the standard of review set forth in the APA). Under this standard, an "'award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).

In this regard, the United States Court of Appeals for the Federal Circuit has explained that, "[w]hen a challenge is brought on the first ground, the test is 'whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a "heavy burden" of showing that the award decision had no rational basis.'" *Id.* (quoting *Impresa*, 238 F.3d at 1332-33). "'When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.'" *Id.* (quoting *Impresa*, 238 F.3d at 1333). In addition, when reviewing an agency's procurement decision, the Court should recognize that the agency's decision is entitled to a "presumption of regularity." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated by Califano v. Sanders*, 430 U.S. 99 (1977). "The [C]ourt should not substitute its judgment for that of a procuring agency . . . ." *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 672 (1997). And so, "[t]he protestor must show, by a preponderance of the evidence, that the agency's actions were either without a reasonable basis or in violation of applicable procurement law." *Info. Tech. & Applics. Corp. v. United States*, 51 Fed. Cl. 340, 346 (2001), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003) (citation omitted).

The Court's standard of review "is highly deferential." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000). As long as there is "'a reasonable basis for the agency's action, the [C]ourt should stay its hand even though it might, as an original proposition, have reached a different conclusion.'" *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1301 (D.C. Cir. 1971)). But, if "the agency 'entirely fail[s] to consider an important aspect of the problem,

[or] offer[s] an explanation for its decision that runs counter to the evidence before the agency,'" then the resulting action lacks a rational basis and, therefore, is defined as "arbitrary and capricious." *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

In addition, this Court affords contracting officers a great deal of discretion in making contract award decisions when the contract is to be awarded to the offeror that will provide the best value to the government. *See Banknote Corp. of Am.*, 365 F.3d at 1355-56; *TRW, Inc. v. Unisys Corp.*, 98 F.3d 1325, 1327-28 (Fed. Cir. 1996); *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996); *Lockheed Missiles & Space Co. v. Bentsen*, 4 F.3d 955, 958-59 (Fed. Cir. 1993). In this regard, the Court has held that the government's best value determination should not be disturbed, if the government documents its analysis and includes a rationale for any business judgments and trade-offs made in reaching that decision. *See Blackwater Lodge & Training Ctr., Inc. v. United States*, 86 Fed. Cl. 488, 514 (2009). And so, a decision to award a contract is least vulnerable to challenge when that decision is based upon a best value determination. *PlanetSpace, Inc. v. United Sates*, 96 Fed. Cl. 119, 125 (2010).

### B.   RCFC 12(b)(1)

When deciding a motion to dismiss upon the ground that the Court does not possess subject-matter jurisdiction pursuant to RCFC 12(b)(1), this Court must assume that all factual allegations in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); RCFC 12(b)(1). But, a plaintiff bears the burden of establishing subject-matter jurisdiction, and it must do so by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Servs.*, 846 F.2d 746, 748 (Fed. Cir. 1988). Should the Court determine that "it lacks jurisdiction over the subject matter, it must dismiss the claim." *Matthews v. United States*, 72 Fed. Cl. 274, 278 (2006); *see* RCFC 12(h)(3).

### C.   Judgment Upon The Administrative Record

Generally, RCFC 52.1 limits this Court's review of an agency's procurement decision to the administrative record. RCFC 52.1; *see Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009) ("'[T]he focal point for judicial review should be the administrative record already in existence.'") (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). And so,

16

unlike a summary judgment motion brought pursuant to RCFC 56, "the existence of genuine issues of material fact does not preclude judgment on the administrative record" under RCFC 52.1. *Tech. Sys., Inc. v. United States*, 98 Fed. Cl. 228, 242 (2011) (citations omitted); RCFC 52.1. Rather, the Court's inquiry is whether, "given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A & D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006) (citation omitted).

### D.    Injunctive Relief

Lastly, under its bid protest jurisdiction, the Court "may award any relief [it] considers proper, including declaratory and injunctive relief." 28 U.S.C. § 1491(b)(2); *see also Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009). In deciding whether to issue a permanent injunction, the Court "considers:  (1) whether . . . the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief." *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citing *Amoco Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.")); *see also Centech Grp., Inc.*, 554 F.3d at 1037. In this regard, the United States Court of Appeals for the Federal Circuit has held that:

> No one factor, taken individually, is necessarily dispositive.  If a preliminary injunction is granted by the trial court, the weakness of the showing regarding one factor may be overborne by the strength of the others. If the injunction is denied, the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial.

*FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993) (citations omitted).

A plaintiff who cannot demonstrate actual success upon the merits cannot prevail upon a motion for preliminary injunctive relief.  *Cf. Nat'l Steel Car, Ltd. v. Canadian Pacific Ry., Ltd*., 357 F.3d 1319, 1324–25 (Fed. Cir. 2004) (finding that a plaintiff who cannot demonstrate a likelihood of success upon the merits cannot prevail upon its motion for preliminary injunctive

relief).  This Court has also found success upon the merits to be "the most important factor for a court to consider when deciding whether to issue injunctive relief."  *Dellew Corp. v. United States*, 108 Fed. Cl. 357, 369 (2012) (citing *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1312 (Fed. Cir. 2007)).  But, while success upon the merits is necessary, it is not sufficient alone for a plaintiff to establish an entitlement to injunctive relief.  *See Contracting, Consulting, Eng'g LLC v. United States*, 104 Fed. Cl. 334, 353 (2012) ("Although plaintiff's entitlement to injunctive relief depends on its succeeding on the merits, it is not determinative because the three equitable factors must be considered, as well.") (citations omitted)).

## III.    LEGAL ANALYSIS

The parties have filed cross-motions for judgement upon the administrative record on the issues of whether the DEA's evaluation process and award decisions with regards to the BPAs at issue in this dispute were reasonable and consistent with the requirements of the RFQ.  *See generally* Pl. Mem.; Def. Mot.; Def.-Int. Mot.  Metro has also filed a motion to dismiss upon the ground that MVM lacks standing to bring this bid protest dispute.  Def.-Int. Mot. at 6-7.

In its motion for judgment upon the administrative record, MVM raises four objections to the DEA's evaluation process and award decisions, namely that:  (1) the DEA's evaluation of Metro's quotation under the RFQ's staffing plan factor and MVM's quotation under the RFQ's corporate experience factor was disparate and irrational; (2) the DEA's contracting officer and source selection authority failed to sufficiently explain their respective decisions to award the BPA for Region I to Metro; (3) the DEA did not fairly and honestly consider MVM's quotations for Regions I, II and III; and (4) the DEA's best value determinations and trade-off analysis for Regions I, II and III were flawed.  Pl. Mem. at 9-31.  And so, MVM requests, among other things, that the Court set aside the DEA's award decisions.  *Id.* at 32.

The government and Metro counter that the DEA's evaluation process and award decisions were rational and consistent with the terms of the RFQ and applicable law.  Def. Mot. at 20-38; Def.-Int. Mot. at 7-23.  And so, they request that the Court sustain the DEA's award decisions.  Def. Mot. at 41; Def.-Int. Mot. at 25.

For the reasons that follow, a careful review of the administrative record shows that the DEA's evaluation and award decisions in connection with the procurement at issue in this case were reasonable and consistent with the terms of the RFQ.  MVM also has not shown that it is

entitled to the injunctive relief that it seeks in this case.  And so, the Court:  (1) **DENIES** MVM's motion for judgment upon the administrative record; (2) **GRANTS** the government's and Metro's respective cross-motions for judgment upon the administrative record; (3) **DENIES-AS-MOOT** Metro's motion to dismiss; and (4) **DISMISSES** the complaint.

### A.    MVM Has Not Shown Disparate Treatment

As an initial matter, MVM's claim that the DEA disparately evaluated quotations under the RFQ's corporate experience and staffing plan factors is not supported by the record evidence. MVM argues that the DEA's evaluation was irrational, because the TEPs for Regions II and III did not assign the same strength to MVM's quotations under the RFQ's corporate experience factor, or the same weaknesses to Metro's quotations under the RFQ's staffing plan factor, as were assigned by the TEP for Region I.  Pl. Mem. at 9-17.  While MVM is correct that the TEPs for these three geographic regions did not assign the same strengths and weaknesses during the re-evaluation of quotations, MVM has not shown that this resulted in a disparate or irrational evaluation process for two reasons.

First, to the extent that MVM can demonstrate that the DEA erred by not assigning the strength and weaknesses at issue in Regions II and III, MVM has not shown that it has been prejudiced by this error.  *Bannum, Inc. v. United States*, 404 F.3d. 1346, 1353 (Fed. Cir. 2005); *see also Lyon Shipyard Co. v. United States*, 113 Fed. Cl. 347, 354 (2013) (holding that a protestor must show agency action in violation of a procurement regulation and significant prejudice as a result of such error).  The administrative record shows that MVM received the highest technical rating possible of "high confidence" under the RFQ's corporate experience factor and the highest overall technical rating of "high confidence" in Regions I, II and III.  AR Tab 48 at 1729, 1787, 1812.  And so, assigning a strength to MVM's quotations in Regions II and III under the RFQ's corporate experience factor could not have increased MVM's overall technical ratings in those geographic regions.  *Id.* at 1787, 1812.

MVM also fails to show that it has been prejudiced by the fact that the TEPs for Regions II and III did not assign the same weaknesses to Metro's quotation with regards to the RFQ's staffing plan factor as were assigned in Region I.  In this regard, the record evidence shows that the TEP for Region I assigned two weaknesses to Metro's quotation under the RFQ's staffing plan factor, resulting in a rating of "some confidence" for this evaluation factor in Region I.  *Id.*

at 1726, 1728.  But, Metro's quotation still received the highest overall technical rating of "high confidence" in Region I.  *Id.* at 1726.

Because the record evidence shows that Metro would have received an overall technical rating of "high confidence" in Regions II and III, even if the TEPs for those regions had assigned the weaknesses assigned to Metro's quotation in Region I under the RFQ's staffing plan factor, MVM simply has not shown that it would have had a substantial chance of being awarded the BPAs at issue, but for the DEA's alleged evaluation errors.[4]  *Id.* at 1790-94, 1811-12; *Bannum, Inc.*, 404 F.3d. at 1353.

The administrative record also fails to support the substance of MVM's disparate treatment claim.  MVM suggests that the DEA had an obligation to reach the same conclusions regarding the technical merits of its quotation for each geographic region covered by the RFQ, because MVM submitted identical quotations for each region.  Pl. Mem. at 12-17.  But, MVM points to no requirement in the RFQ, or elsewhere, that the DEA do so.  *Id.*; *see also* Oral Arg. Tr. at 17:4-17:6 (showing that MVM agrees that the evaluation of quotations does not need to be exactly the same between the different TEPs).

In fact, the administrative record makes clear that the RFQ contemplates that different and independent technical evaluation panels would perform the evaluation of quotations for each region covered by the RFQ.[5]  AR Tab 35 at 1463, 1483, 1506; *see also* AR Tab 48.  Given the RFQ's requirements, it was reasonable and consistent with the RFQ for the TEP for each geographic region to reach different business judgments and conclusions regarding the technical merits of MVM's and Metro's respective quotations.  AR Tab 5 at 81; *see generally* AR Tab 48.

---

[4] The government also persuasively argues that the DEA could have awarded the BPAs for Regions I, II and III to Metro under the terms of the RFQ, even if MVM offered a technically superior quotation.  Def. Mot. at 26-27.  The RFQ requires that the DEA equally weigh technical acceptability and price in making an award decision.  AR Tab 5 at 81.  It is undisputed that Metro offered a lower price than MVM in Regions I, II and III.  AR Tab 51 at 1948.

[5] The record evidence also shows that each TEP made its own independent business judgments in evaluating quotations.  *See generally* AR Tab 48.  For example, the Region II TEP identified three "concerns" with respect to MVM's Region II quotation for the corporate experience, staffing plan and quality control plan factors.  *Id.* at 1790.  By comparison, the TEP for Region I did not identify any of these concerns.  *Id.* at 1729-32.

MVM's claim that the DEA's source selection authority improperly failed to consider the strength assigned to its quotation under the RFQ's corporate experience factor and the two weaknesses assigned to Metro's quotation under the RFQ's staffing plan factor in Region I is also belied by the record evidence.  Pl. Mem. at 11, 14-17.  The SSA specifically notes in her source selection decision that MVM received a strength for corporate experience in Region I. AR Tab 51 at 1945.

The SSA also observes that Metro received two weaknesses under the RFQ's staffing plan factor in Region I.  *Id.*  And so, the administrative record shows that the SSA considered the strength and weaknesses assigned by the TEP for Region I.

Because MVM has neither shown that the DEA conducted a disparate evaluation of MVM's and Metro's quotations, or that such an evaluation error could have prejudiced MVM, the Court must deny MVM's disparate treatment claim.[6]

## B.    The DEA Adequately Explained Its Region I Award Decision

MVM's claim that the DEA failed to explain the decision to award the BPA for Region I to Metro is also unsubstantiated by the record evidence.  Pl. Mem. at 17-23.  MVM argues that the Court should set aside the DEA's Region I award, because the administrative record lacks an explanation of why the DEA awarded the Region I BPA to Metro during the re-evaluation process, after initially awarding this BPA to MVM.  *Id.* at 17.

While MVM correctly observes that the administrative record does not contain an explanation comparing the DEA's initial Region I award decision with the agency's ultimate decision to award this BPA to Metro, MVM, again, points to no requirement in the RFQ—or elsewhere—that the DEA provide such an explanation.  *See id.* at 17-21.

MVM also argues without persuasion that the DEA's contracting officer ignored the strength assigned to its quotation under the RFQ's corporate experience factor and the two weaknesses assigned to Metro's quotation under the RFQ's staffing plan factor, when she

---

[6] During oral argument, MVM argued that the DEA's evaluation process was irrational because the DEA was willing to pay a significant price premium to Metro with regards to the award of the BPA for Region IV.  Oral Arg. Tr. at 23:12-23:20.  But, the record evidence in this case makes clear that the DEA's evaluation of responsive quotations for Regions I, II and III was consistent with the terms of the RFQ and that the DEA's award decisions were reasonable.  *See generally* AR Tab 48.

conducted the DEA's best value analysis for Region I. *Id.* at 20-23. But, as MVM acknowledges, the administrative record makes clear that the DEA's contracting officer did in fact consider the aforementioned strength and weaknesses during the best value analysis for Region I. *Id.* at 20; AR Tab 50 at 1908-09.

Notably, the contracting officer specifically states in her best value analysis that she disagrees with weaknesses assigned to Metro's quotation under the RFQ's staffing plan factor in Region I. AR Tab 50 at 1914. The contracting officer also states in her analysis that she agrees with the "high confidence" rating that the Region I TEP awarded to MVM's quotation for all six of the RFQ's technical factors, including corporate experience. *Id.* Indeed, the contracting officer makes clear in her best value analysis that she "[r]eviewed each Offeror's strengths pertaining to their respective approaches under each non-price evaluation factors. . . . [and] determined that many of these strengths were similar as between both Offerors." *Id.* at 1915. And so, MVM's claim that the contracting officer disregarding information related to the technical evaluation of the quotations submitted by MVM and Metro in Region I is simply contradicted by the record evidence.

The Court is also not persuaded by MVM's argument that the DEA's evaluation process for Region I was irrational, because the agency's source selection authority failed to adequately explain the decision to award the BPA for this region to Metro. Pl. Mem. at 17-23. Again, the administrative record shows that the SSA considered the technical merits of Metro's quotation for Region I and determined that Metro offered the superior quotation and a lower price. AR Tab 51 at 1949 (the SSA observes that "[c]onsidering price alone Metro has the best quotation, with a difference of 8% less than MVM.").

The administrative record also makes clear that the SSA observes in her decision that "[t]he price variance [between MVM and Metro] can be attributed to the differing technical approaches and management structures of the two offerors." *Id.* And so, the record evidence shows that the SSA reasonably concluded in her source selection decision that there was not sufficient justification to warrant the additional cost associated with making an award to MVM and she reasonably decided to award the BPA for Region I to Metro.[7] *Id.* Because the record

---

[7] During oral argument, MVM argued that the SSA's source selection decision is deficient because the SSA does not specifically discuss the results of the DEA's technical evaluation for each region in the final

evidence shows that the DEA adequately explained its award decision for Region I, the Court must DENY MVM's claim.

### C.     The DEA Did Not Breach An Implied
Duty To Fairly Consider MVM's Quotations

The record evidence also does not support MVM's claim that the DEA breached its duty to fairly and honestly consider MVM's quotations.  MVM argues that the DEA breached this duty for two reasons:  (1) the SSA overlooked MVM's strength under the RFQ's corporate experience factor and the two weaknesses assigned to Metro's quotation under the RFQ's staffing plan factor; and (2) the DEA mislead MVM with regards to the pricing for its quotations during the re-evaluation process.  Pl. Mem. at 23-25.  Neither of MVM's arguments are supported by the record evidence.

First, as mentioned previously, the administrative record makes clear that the DEA's SSA considered the strength and weaknesses assigned by the TEP for Region I in her source selection decision.  AR Tab 51 at 1945.

MVM's contention that the DEA failed to fairly consider MVM's quotation, because the DEA mislead MVM during the agency-level protest of the award of the BPA for Region IV, is similarly without merit.  Pl. Mem. at 24-25.  To support this claim, MVM points to a letter from the DEA to MVM, dated February 11, 2019, in which the DEA states that "'[w]ith MVM's pricing comes a higher degree of risk of not being able to find less common linguists, the increased likelihood of nonperformance of Spanish linguists . . . and sub-par quality control reviews.'"  AR Tab 27 at 1364 (internal citation omitted).  But, MVM acknowledges that the DEA did not state in this letter that MVM's initial price quote for Region IV was unrealistic.  Pl. Mem. at 24; *see also* AR Tab 27 at 1364 (noting that MVM's Region IV quotation "did not convey the highest confidence in its technical approach to its Quality Control Plan.").

---

paragraph of that decision.  Oral Arg. Tr. at 20:1-20:15.  But, when read in totality, the SSA Decision makes clear that the SSA adequately considered the findings of the TEPs for Regions I, II and III and considered the contracting officer's best value determinations for each geographic region, before making the source selection decision.  AR Tab 51 at 1940-49.

MVM also does not point to any other evidence in the record to support its claim that the DEA mislead MVM regarding the pricing for its quotations for Regions I, II and III. *See* Pl. Mem. at 23-25. And so, the Court must also DENY this claim.

### D.      The DEA Conducted A Rational Best Value Analysis

MVM's final claim—that the DEA conducted a flawed best value analysis—is also unsubstantiated by the record evidence. MVM argues that the DEA's best value analysis was flawed, because the SSA: (1) minimized the technical differences between MVM's and Metro's respective quotations; (2) failed to consider the weaknesses assigned to Metro's quotation under the RFQ's staffing plan factor in Region I; and (3) erred by making one source selection decision for the awards of the BPAs for Regions I, II and III. Pl. Mem. at 26-28. MVM also contends that the SSA erroneously stated that Metro's price was 8% lower than MVM's price for Regions I, II and III in her decision and that the DEA improperly intended to award the BPA for Regions I, II and III to the same offeror. *Id.* at 27-28; Pl. Resp. at 21-23. A review of the administrative record shows that each of these objections lack merit.

First, as previously stated, the record evidence makes clear that the SSA considered the weaknesses assigned to Metro's quotation under the RFQ's staffing plan factor in Region I during her best value trade-off analysis. AR Tab 51 at 1945.

MVM's argument that the SSA minimized the technical differences between MVM's and Metro's quotations is similarly belied by the record evidence. Pl. Mem. at 26-27. The SSA's source selection decision specifically addresses the varying technical approaches proposed by MVM and Metro and the SSA observes in that decision that "[t]he price variance [between the two quotations] can be attributed to the differing technical approaches and management structures of the two offerors." AR Tab 51 at 1949; *see also* AR Tab 51 at 1945.

MVM also argues without support that the SSA incorrectly determined that MVM's proposed price was 8% higher than Metro's proposed price. Pl. Mem. at 27. A review of the record evidence shows that Metro's combined proposed price for Regions I, II and III was approximately 8% lower than MVM's combined proposed price. AR Tab 51 at 1948; *see also* Def. Mot. at 26; Oral Arg. Tr. at 34:17-34:25.

MVM's objection that the SSA improperly intended to award the BPAs for Regions I, II and III to the same offeror is also unsubstantiated. MVM does not identify any evidence in the record to support this claim. *See* Pl. Mem. at 28. And so, this objection is also unsubstantiated.

Lastly, MVM's argument that the SSA erred by combining her trade-off analysis for the BPAs for Regions I, II and III into one analysis also lacks evidentiary support. *Id.* at 28-29; Pl. Resp. at 22-23. As discussed above, the record evidence shows that the SSA adequately explained and documented her best value trade-off analysis with regards to Regions I, II and III in her source selection decision. AR Tab 51 at 1949. MVM also fails to point to anything in the RFQ that requires that the SSA conduct a separate trade-off analysis for each of the geographic regions covered by the RFQ. *See* Pl. Mem. at 28-29. Given this, MVM simply has not shown that the DEA conducted a flawed best value and trade-off analysis. And so, the Court DENIES MVM's claim.

### E.   MVM Is Not Entitled To Injunctive Relief

As a final matter, MVM is not entitled to the injunctive relief that it seeks in this case. MVM requests, among other things, that the Court order the DEA to rescind the awards of the BPAs for Regions I, II and III. Am. Compl. at 13. But, a plaintiff that has not demonstrated success upon the merits cannot prevail upon a motion for such permanent injunctive relief. *Argencord Mach. & Equip., Inc. v. United States*, 68 Fed. Cl. 167, 176 (2005).

In this case, MVM has not succeeded upon the merits of any of its claims challenging the DEA's evaluation process and award decisions in connection with the RFQ. And so, the Court DENIES MVM's request for injunctive relief.

## IV.   CONCLUSION

In sum, MVM has not shown that the DEA's evaluation process and award decisions with regards to the three BPAs at issue in this case were arbitrary, capricious, or contrary to the terms of the RFQ. Rather, the record evidence shows that the DEA conducted a reasonable evaluation process and that the agency reasonably determined that Metro presented the best value to the government and awarded the BPAs for Regions I, II and III to Metro.

And so, for the foregoing reasons, the Court:

1. **DENIES** MVM's motion for judgment upon the administrative record;

2.  **GRANTS** the government's and Metro's respective cross-motion for judgment upon the administrative record;

3.  **DENIES-AS-MOOT** Metro's motion to dismiss; and

4.  **DISMISSES** the complaint.

The Clerk shall enter judgment accordingly.

Each party to bear its own costs.

Some of the information contained in this Memorandum Opinion and Order may be considered protected information subject to the Protective Order entered in this matter on March 4, 2020. This Memorandum Opinion and Order shall therefore be filed **UNDER SEAL**. The parties shall review the Memorandum Opinion and Order to determine whether, in their view, any information should be redacted in accordance with the terms of the Protective Order prior to publication. The parties shall **FILE** a joint status report identifying the information, if any, that they contend should be redacted, together with an explanation of the basis for each proposed redaction on or before **August 3, 2020**.

   **IT IS SO ORDERED.**


s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge